IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 7:22-cr-038 |
| ) | |
| KEITH OBIE GATES, ) | By:   Michael F. Urbanski |
| ) | Chief United States District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Keith Obie Gates' motion to dismiss his indictment, ECF No. 1, which charges him with one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Gates contends that § 922(g)(1) is unconstitutional because it infringes on his rights under the Second Amendment in light of the Supreme Court's decision in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022). He is wrong. Bruen did not abrogate binding Fourth Circuit precedent upholding the constitutionality of § 922(g)(1). See United States v. Moore, 666 F.3d 313 (4th Cir. 2012); United States v. Pruess, 703 F.3d 242 (4th Cir. 2012). Accordingly, Gates' motion is **DENIED with prejudice**.

I.

The government charged Gates with violating § 922(g)(1) after he allegedly pulled a handgun on his landlord. Gates, previously convicted of a felony, had not paid rent for six months. When his landlord told him on August 19, 2022, that he would be evicted, Gates "withdrew a Colt 45 semiautomatic pistol from under his shirt and pointed it toward" his landlord. Def.'s Mot. to Dismiss, ECF No. 51, at 2.

1

A search of Gates' residence later that day revealed "an extended firearm magazine, a baggie of suspected marijuana, a baggie of white powder, and a conversion kit for use in converting a pistol into a shoulder-fired firearm." Id. The grand jury indicted Gates on November 3, 2022, for violating § 922(g)(1).

## II.

Federal Rule of Criminal Procedure 12 indicates that a court should dismiss criminal charges in an indictment "where there is an infirmity of law in the prosecution," such as an unconstitutional statute. United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012). Gates argues that § 922(g)(1) violates the Second Amendment to the United States Constitution, which states that "[a] well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, the Supreme Court held that the Second Amendment codified the individual right to keep and bear arms independent of service in a militia. 554 U.S. 570, 592–95 (2008). The Court indicated, however, that, "[l]ike most rights, the right conferred by the Second Amendment is not unlimited." Id. at 626. Indeed, the majority in Heller explicitly cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," along with several other prohibitions. Id. In McDonald v. City of Chicago, the Court "repeat[ed] those assurances" it originally set out in Heller, namely that the conduct criminalized by § 922(g)(1) was not in question. 561 U.S. 742, 786 (2010).

Following Heller and McDonald, the Fourth Circuit, along with several additional Courts of Appeals, adopted a two-part test to determine whether a government regulation

2

violated the Second Amendment. See United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010). The court instructed that the "first question is 'whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.'" Id. (citing United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)). If the answer to that question is yes, then "'the government bears the burden of justifying its regulation in the context of' a sliding scale 'means-end scrutiny' in which the burden imposed on the right is weighed against the government's interest in the regulation of the conduct." United States v. Riley, 635 F. Supp. 3d 411, 420–21 (E.D. Va. 2022) (quoting Chester, 628 F.3d at 679–80).

"The Chester progeny further refined this Circuit's application of the two-part test, including its assessments of the historical underpinnings of limiting firearm possession for certain individuals." Id. at 421. The Fourth Circuit applied the Chester framework to uphold statutes restricting the possession of firearms by individuals convicted of felonies, Moore, 666 F.3d 313; Pruess, 703 F.3d 242, individuals who use controlled substances, United States v. Carter, 669 F.3d 411, 420–21 (4th Cir. 2012), and individuals "who have entered the United States unlawfully," United States v. Carpio-Leon, 701 F.3d 974, 975 (4th Cir. 2012). Courts of Appeals across our nation similarly developed and applied mechanisms to handle challenges to the felon-in-possession statute and concluded by overwhelming majority that Heller and McDonald did not render these statutes unconstitutional. See, e.g., United States v. Vongxay, 594 F.3d 1111 (9th Cir. 2010); Kanter v. Barr, 919 F.3d 437, 441–42 (7th Cir. 2019); Medina v. Whitaker, 913 F.3d 152, 156 (D.C. Cir. 2019); N.Y. State Rifle & Pistol Association, Inc. v. Cuomo, 804 F.3d 242, 254–55 (2d Cir. 2015); United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009); United States v. Rozier, 598 F.3d 768, 770–71 (11th Cir. 2010). District

courts, including those in the Fourth Circuit, repeatedly followed these appellate rulings. See, e.g., United States v. Elkins, 780 F. Supp. 2d 473, 476–78 (W.D. Va. 2011) (Jones, J.); United States v. Larson, 843 F. Supp. 2d 641, 644–45 (W.D. Va. 2012) (Conrad, C.J.); Hamilton v. Pallozzi, 165 F. Supp. 3d 315, 324–25 (D. Md. 2016) (collecting cases).

"In [Bruen], the Supreme Court retooled the two-step inquiry propagated by the Heller progeny by eliminating the second step and analogizing modern day restrictions on firearm possession to those practices known to the Founders at the time of ratifying the Second Amendment." Riley, 635 F. Supp. 3d at 422. The framework, which had been followed for years, involved "one step too many," according to the Bruen Court. 597 U.S. at 19. The Court explained that the first step "is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history." Id. But the second step of the transnationally adopted analysis did not comport with Heller, which "centered on constitutional text and history . . . not . . . any means-end test such as strict or intermediate scrutiny." Id. at 22. Instead, regulations on conduct covered by the Second Amendment must be "consistent with the Nation's historical tradition of firearm regulation." Id. at 24. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" Id. (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 49 n.10 (1961)).

This court has previously addressed the impact of Bruen on a statute that criminalizes the possession of firearms.

> Bruen, and the cases it follows, are focused on protecting the Second Amendment rights of law-abiding citizens, and, as such, do not invalidate laws prohibiting criminal conduct, such as the one at issue here, which prohibits possession of a firearm in

4

> furtherance of a drug trafficking crime. In short, the Second Amendment does not guarantee a person the right to use or carry a firearm while engaged in criminal activity.

Snead, 647 F. Supp. 3d 475, 477 (W.D. Va. 2022) (Urbanski, C.J.). Although Snead considered the constitutionality of the statute criminalizing the knowing possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c), its rationale extends to this case: a person previously convicted of a felony who possesses a firearm is engaged in criminal activity. 18 U.S.C. § 922(g)(1); see Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019). And the Second Amendment, as explained by the Supreme Court in Heller, McDonald, and Bruen, does not protect criminalized conduct. Therefore, Bruen does not render § 922(g)(1) unconstitutional.

Indeed, the Court in Bruen recognized that the "Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." Id. at 70 (quoting Heller, 554 U.S. at 581) (emphasis added). And concurring Justices Kavanaugh and Roberts assured that, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," including "longstanding prohibitions on the possession of firearms by felons." Id. at 80–81 (citing Heller, 554 U.S. at 626–27) (Kavanaugh, J., concurring).

Courts across the country are wrestling with the impact of Bruen on the felon-in-possession statute. See, e.g., United States v. Miles, 86 F.4th 734, 740–41 (7th Cir. 2023) (stating that the constitutionality of § 922(g)(1) is "unsettled" following Bruen); United States v. Jackson, 69 F.4th 495 (8th Cir. 2023) (stating that Bruen did not "cast doubt on" the constitutionality of the felon-in-possession statute); but see United States v. Rahimi, 61 F.4th 443, 461 (5th Cir. 2023), cert. granted, 143 S. Ct. 2688 (2023) (mem.) (concluding that a statute

proscribing the possession of firearms by individuals under domestic violence protection orders is unconstitutional under Bruen). Indeed, courts are struggling to even ascertain the kinds of resources necessary to apply Bruen's guidance.

Courts differ on whether Bruen renders § 922(g)(1) unconstitutional. Compare Range v. Att'y Gen. U.S., 69 F.4th 96, 106 (3d Cir. 2023) (en banc) ("Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights."), with Jackson, 69 F.4th at 505 ("Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons."); see also Vincent v. Garland, 80 F.4th 1197, 1202 (10th Cir. 2023) (citing United States v. McCane, 573 F.3d 1037 (10th Cir. 2009)) (finding that "Bruen did not indisputably and pellucidly abrogate [the Tenth Circuit's] precedential opinion in McCane," in which the court affirmed the constitutionality of § 922(g)(1) after Heller). And this Circuit has yet to weigh in. But see Md. Shall Issue, Inc. v. Moore, 86 F.4th 1038, 1046 n.10 (4th Cir. 2023), reh'g granted en banc, No. 21-2017, 2024 WL 124290 (4th Cir. Jan. 11, 2024) (suggesting that some "modern U.S. code provisions," including § 922(g)(1), may not benefit from sufficient historical analogues). Divergence and disparate prosecution will only spread without clear resolution of this issue. See Rahimi, 143 S. Ct. 2688 (granting certiorari to address the constitutionality of 18 U.S.C. § 922(g)(8)).

The Western District of Virginia has repeatedly declined to dismiss indictments based on Bruen challenges. See Snead, 647 F. Supp. at 477; United States v. Robinson-Davis, No. 7:22-cr-00045, 2023 WL 2495805, at *1 (W.D. Va. Mar. 14, 2023) (Cullen, J.); United States v.

6

Wagoner, No. 4:20-cr-00018, 2022 WL 17418000, at *4–5 (W.D. Va. Dec. 5, 2022) (Dillon, J.). In Robinson-Davis, the court concluded that the Fourth Circuit's precedent in Moore, 666 F.3d 313, and Pruess, 703 F.3d 242, remain good law after Bruen. 2023 WL 2495805, at *3. "Lower courts must take the Supreme Court at its word that its recent jurisprudence, which has further strengthened Second Amendment rights, should not be read to push § 922(g)(1) outside the 'safe harbor' of the presumptively valid firearms regulations not subject to heightened scrutiny." Id. This court concurs that absent clear precedent to the contrary, Bruen did not invalidate Moore or Pruess, or Heller for that matter, and thus § 922(g)(1) remains constitutional. Gates' motion to dismiss the indictment is **DENIED with prejudice**.

It is **SO ORDERED**.

Entered: February 13, 2024

Michael F. Urbanski
Chief United States District Judge